UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| BOOTH FAMILY TRUST, | |
| Plaintiff, | Case No._____ |
| v. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| MYLAN N.V., HEATHER BRESCH, ROBERT J. CINDRICH, ROBERT J. COURY, JOELLEN LYONS DILLON, NEIL DIMICK, MELINA HIGGINS, HARRY A. KORMAN, RAJIV MALIK, RICHARD MARK, MARK W. PARRISH, RANDALL L. VANDERVEEN, PAULINE VAN DER MEER MOHR, and SJOERD S. VOLLEBREGT, | JURY TRIAL DEMANDED |
| Defendants. | |

---

Plaintiff Booth Family Trust ("Plaintiff"), by and through its undersigned counsel, for its complaint against defendants, alleges upon personal knowledge with respect to itself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.      This action is brought by Plaintiff against Mylan N.V. ("Mylan" or the "Company") and the members of Mylan's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which: (i) Pfizer, Inc. ("Pfizer") will spin off its global primarily off-patent branded and generic established medicines business (the "Upjohn Business") into a new entity called Upjohn Inc.

("Newco"); (ii) Pfizer will then distribute to its stockholders all of the issued and outstanding shares of Newco common stock held by Pfizer by way of a pro rata dividend; and (iii) Mylan will merge with and into Newco, forming a new company to be named Viatris (the "Proposed Transaction").[1]

2.       On July 29, 2019, Pfizer and Newco entered into a Separation and Distribution Agreement and, on the same day, Pfizer, Newco, Mylan and certain of their affiliates entered into a Business Combination Agreement (the "Business Combination Agreement").  Under the terms of the Business Combination Agreement, each Mylan stockholder will receive one share of the new, combined company for each share of Mylan stock they own (the "Merger Consideration").  Upon completion of the Proposed Transaction, Pfizer stockholders will own 57% of the combined new company and Mylan stockholders will own 43% of the combined new company.

3.       On February 13, 2020, Mylan filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Mylan stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Mylan and the Upjohn Business' financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Company's financial advisors, Centerview Partners LLC ("Centerview") and PJT Partners LP ("PJT"); and (iii) PJT's potential conflicts of interest.  The

---

[1] The Proposed Transaction is structured as a Reverse Morris Trust transaction, which allows a parent company (in this case, Pfizer) to divest a subsidiary (in this case, Newco) in a tax-efficient manner.  The first step of such a transaction is a distribution of the subsidiary's stock to the parent company stockholders (in this case, Pfizer's distribution of the stock of Newco to the Pfizer stockholders) in a transaction that is generally tax-free under Section 355 of the Internal Revenue Code of 1986, as amended.  The distributed subsidiary then combines with a third party (in this case, Mylan).  Such a transaction can qualify as generally tax-free for U.S. federal income tax purposes for the parent company and its stockholders if the transaction structure meets all applicable requirements, including that the parent company stockholders own more than 50% of the stock of the combined entity immediately after the combination.

failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Mylan stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction.

4.      In short, unless remedied, Mylan's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Moreover, Mylan's common stock trades on the Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of

Mylan.

9.      Defendant Mylan is incorporated in the Netherlands, with principal executive offices located at Building 4, Trident Place, Mosquito Way, Hatfield, Hertfordshire, AL10 9UL, England.  The Company is a global pharmaceutical company committed to setting new standards in healthcare and providing 7 billion people access to high quality medicine.  It offers a growing portfolio of more than 7,500 products, including prescription generic, branded generic, brand-name and biosimilar drugs, as well as over-the-counter remedies.  The Company markets products in more than 165 countries and territories and employs an approximately 35,000-strong workforce. Mylan's shares trade on the Nasdaq Global Select Market under the ticker symbol "MYL."

10.     Defendant Heather Bresch ("Bresch") has been Chief Executive Officer ("CEO") of the Company since January 2012 and a director since 2011.

11.     Defendant Robert J. Cindrich ("Cindrich") has been a director of the Company since 2011.

12.     Defendant Robert J. Coury ("Coury") has been Chairman of the Board since June 2016 and a director of the Company since February 2002.  Defendant Coury also previously served as CEO of the Company from September 2002 until January 2012 and Executive Chairman from 2012 until June 2016.

13.     Defendant JoEllen Lyons Dillon ("Dillon") has been a director of the Company since 2014.

14.     Defendant Neil Dimick ("Dimick") has been a director of the Company since 2005.

15.     Defendant Melina Higgins ("Higgins") has been a director of the Company since 2013.

16.     Defendant Harry A. Korman ("Korman") has been a director of the Company since 2018.

17.     Defendant Rajiv Malik ("Malik") has been President of the Company since January 2012 and a director of the Company since 2013.

18.     Defendant Richard Mark ("Mark") has been a director of the Company since June 2019.

19.     Defendant Mark W. Parrish ("Parrish") has been a director of the Company since 2009.

20.     Defendant Randall L. Vanderveen ("Vanderveen") has been a director of the Company since 2002.

21.     Defendant Pauline van der Meer Mohr ("van der Meer Mohr") has been a director of the Company since 2018.

22.     Defendant Sjoerd S. Vollebregt ("Vollebregt") has been a director of the Company since 2017.

23.     Defendants identified in paragraphs 10-22 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

24.     Incorporated in Delaware and headquartered in New York, Pfizer is a research-based, global biopharmaceutical company.  Pfizer applies science and its global resources to bring therapies to people that extend and significantly improve their lives through the discovery, development, manufacture and distribution of healthcare products, including innovative medicines and vaccines.  Pfizer works across developed and emerging markets to advance wellness,

prevention, treatments and cures that challenge the most feared diseases of our time.  Pfizer's
shares trade on the New York Stock Exchange under the ticker symbol "PFE."

25.     Newco is a global, primarily off-patent branded and generic medicines business,
and a direct wholly owned affiliate of Pfizer.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

26.     Incorporated under Netherlands law in 2014, Mylan is a global pharmaceutical
company committed to setting new standards in healthcare and providing 7 billion people access
to high quality medicine.  It offers a growing portfolio of more than 7,500 products, including
prescription generic, branded generic, brand-name and biosimilar drugs, as well as over-the-
counter remedies.  The Company markets products in more than 165 countries and territories and
employs an approximately 35,000-strong workforce.

27.     Operationally, the Company vertically integrates much of its manufacturing
activity, producing many of its own active pharmaceutical ingredients and finished dosage forms.
This approach affords greater control over the cost and quality of Company products.  Mylan's
customer base numbers in the tens of thousands, including retail pharmacies; wholesalers and
distributors; payers, insurers and governments; and institutions such as hospitals; among others.
The Company reports results in three segments on a geographic basis as follows: North America,
Europe and Rest of World.

28.     On February 27, 2020, the Company reported its fourth quarter and full year 2019
financial results, including the following highlights: (i) fourth quarter 2019 revenue totaled $3.19
billion, up 4%, and 5% on a constant currency basis, compared to the fourth quarter of 2018; (ii)
Rest of World segment net sales were $927.9 million for the quarter, up 9% on an actual and

constant currency basis from the same period in 2018; (iii) fourth quarter Europe segment net sales were $1.11 billion, up 2%, and 5% on a constant currency basis; (iv) North America segment net sales totaled $1.13 billion during the quarter, up 3% from fourth quarter 2018, on an actual and constant currency basis; (v) adjusted diluted earnings per ordinary share ("adjusted EPS") were $1.40, up 8% compared to adjusted EPS of $1.30 in the same period of the prior year; (vi) U.S. GAAP net cash provided by operating activities of $686.7 million, up 8% compared to $636.1 million in the same period of the prior year; and (vii) adjusted free cash flow for the quarter of $810.5 million, up 18% compared to $689.7 million in the prior year period.

29.     The Company also reported strong results for the full year 2019.  Full-year 2019 revenue totaled $11.50 billion, up 1%, and 3% on a constant currency basis, compared to the prior year.  Defendant Bresch commented on the results, stating in relevant part:

> Mylan's 2019 full year and fourth quarter results demonstrate the durability and strength of the business model we have created as well as our continued long-term commitment to expand access to medicine. Our model continues to be best positioned to withstand the negative trends impacting the industry, and allowed us to deliver on every key metric we set out to achieve in 2019, including total revenue, revenue from new product launches, and both adjusted cash flow and EPS. Our performance is the result of a number of key milestones, including growth across all segments in the fourth quarter and for the year on a constant currency basis.

**The Proposed Transaction**

30.     On July 29, 2019, Mylan and Pfizer issued a joint press release announcing the terms of the Proposed Transaction, which states, in relevant part:

> HERTFORDSHIRE, England and PITTSBURGH and NEW YORK, July 29, 2019 -- Mylan N.V. (Nasdaq: MYL) and Pfizer Inc. (NYSE: PFE) today announced a definitive agreement to combine Mylan with Upjohn, Pfizer's off-patent branded and generic established medicines business, creating a new global pharmaceutical company. Under the terms of the agreement, which is structured as an all-stock, Reverse Morris Trust transaction, each Mylan share would be converted into one share of the new company. Pfizer shareholders would own 57% of the combined new company, and Mylan shareholders would own 43%. The Boards of Directors of both Mylan and Pfizer have unanimously approved the transaction.

The new company will transform and accelerate each businesses' ability to serve patients' needs and expand their capabilities across more than 165 markets by bringing together two highly complementary businesses. Mylan brings a diverse portfolio across many geographies and key therapeutic areas, such as central nervous system and anesthesia, infectious disease and cardiovascular, as well as a robust pipeline, high-quality manufacturing and supply chain excellence. Upjohn brings trusted, iconic brands, such as Lipitor (atorvastatin calcium), Celebrex (celecoxib) and Viagra (sildenafil), and proven commercialization capabilities, including leadership positions in China and other emerging markets.

The transaction will allow the new company to meaningfully expand the geographic reach of Mylan's existing broad product portfolio and future pipeline – including significant investments that have been made across complex generics and biosimilars – into new growth markets where Upjohn has existing sales infrastructure and local market expertise.

The combination will drive a sustainable, diverse and differentiated portfolio of prescription medicines, complex generics, over-the-counter products and biosimilars supported by commercial and regulatory expertise, established infrastructure, best-in-class R&D capabilities and high-quality manufacturing and supply chain excellence.

\*\*\*

**Leadership, Governance and Structure**

The new company, which will be renamed and rebranded at close, will be led by Mylan's current Chairman Robert J. Coury, who will serve as Executive Chairman of the new company; Michael Goettler, current Group President, Upjohn, who will serve as Chief Executive Officer (CEO); and Rajiv Malik, current Mylan President, who will serve as President. Ken Parks, currently CFO of Mylan, has agreed to depart the company at closing. Heather Bresch, Mylan's current CEO, will retire from Mylan upon the close of this transaction.

The Board of Directors of the new company will include its Executive Chairman and its CEO, as well as eight members designated by Mylan, and three members designated by Pfizer, for a total of thirteen members.

The new company will be domiciled in the U.S. and incorporated in Delaware and will operate Global Centers in Pittsburgh, Pennsylvania; Shanghai, China, and Hyderabad, India.

\*\*\*

**Transaction Highlights**

The combination will be effected through a Reverse Morris Trust, under which Upjohn is expected to be spun off or split off to Pfizer's shareholders and simultaneously combined with Mylan. The transaction is expected to be tax free to Pfizer and Pfizer shareholders and taxable to Mylan shareholders. The transaction is anticipated to close in mid-2020, subject to approval by Mylan shareholders and customary closing conditions, including receipt of regulatory approvals. No vote is required by Pfizer shareholders.  Upjohn will issue $12 billion of debt at or prior to separation, with gross debt proceeds retained by Pfizer. Upon closing, the new company is expected to have a solid investment grade credit rating. The new company will have approximately $24.5 billion of total debt outstanding at closing.

**Insiders' Interests in the Proposed Transaction**

31.     Mylan insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Mylan.

32.     Notably, certain Company insiders will secure positions for themselves with the combined company.  For example, the Proxy Statement states that, "[i]t is expected that many of the members of the Mylan Board . . . will become members of the Newco Board. . . ."  Proxy Statement at 128.  The Proxy Statement also provides that defendant Coury will serve as Executive Chairman and defendant Malik will serve as president of the combined company.  Defendant Coury also stands to receive a one-time award of $10 million upon assuming his new role with the combined company, as well as a one-time grant of 1.6 million performance-based restricted stock units.

33.     Moreover, if they are terminated in connection with the Proposed Transaction, Mylan's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation as set forth in the following table:

**Golden Parachute Compensation**

| Named Executive Officer | Cash ($)(1) | Equity ($)(2) | Benefits ($)(3) | Total ($)(4) |
|---|---|---|---|---|
| Heather Bresch | 18,450,000 | 12,641,480 | 309,379 | 31,400,859 |
| Kenneth S. Parks | 6,470,921 | 3,494,249 | 541,907 | 10,507,077 |
| Rajiv Malik | 12,387,500 | 8,211,473 | 577,567 | 21,176,540 |
| Anthony Mauro | 5,435,000 | 3,683,609 | 302,823 | 9,421,432 |

## The Proxy Statement Contains Material Misstatements and Omissions

34.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Mylan's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

35.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Mylan and the Upjohn Business' financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Centerview and PJT; and (iii) PJT's potential conflicts of interest.

### *Material Omissions Concerning Mylan's and the Upjohn Business' Financial Projections*

36.     The Proxy Statement omits material information regarding the Company's and the Upjohn Business' financial projections.

37.     For example, the Proxy Statement fails to disclose how the unlevered free cash flows for Mylan and the Upjohn Business were calculated and the line items underlying the unlevered free cash flow figures.

38.     Additionally, the Proxy Statement sets forth that:

On June 20, 2019, the Mylan Board and the Mylan Strategic Review Committee met concurrently in person in Dublin, Ireland to discuss the potential combination of Mylan and the Upjohn Business and Mylan's standalone strategic plan, with members of Mylan senior management and representatives of Centerview, PJT Partners, Cravath, Nauta and Galt & Company, advisor to Mylan, participating. Members of Mylan senior management presented an update on Mylan's standalone

strategic plan and certain contemplated business transformation initiatives, and reviewed the Mylan Financial Projections, which reflected developments in Mylan's business and industry since the preparation and review of the prior financial projections prepared by Mylan management.

*Id.* at 99.  The Proxy Statement fails, however, to disclose the specific revisions to Mylan's financial projections, which reflected developments in Mylan's business and industry since the preparation and review of the prior financial projections prepared by Mylan management and further fails to quantify the impact that the revisions had to the Company's financial projections.

39.     Moreover, in connection with Centerview's and PJT's financial analyses, Centerview reviewed, among other things, "certain cost savings and operating synergies projected by management of Mylan, Pfizer and the Upjohn Business to result from the transactions, furnished to Centerview by Mylan for purposes of Centerview's analysis, which are referred to in this summary of Centerview's opinion as the "Synergies." *Id.* at 111.  Similarly, PJT, among other things:

reviewed certain cost savings and operating synergies projected by management of Mylan, Pfizer and the Upjohn Business to result from the transactions, furnished to PJT Partners, and approved for PJT Partners' use, by the management of Mylan for purposes of PJT Partners' analysis, which are collectively referred to in this summary of PJT Partners' opinion as the "Synergies";

*Id.* at 113.  Yet, the Proxy Statement fails to disclose the Synergies relied upon by the Company's financial advisors in their financial analyses.

40.     The omission of this information renders the statements in the "Certain Unaudited Prospective Financial Information" and "Background of the Combination" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Centerview's and PJT's Financial Analyses***

41.     The Proxy Statement describes Centerview's and PJT's fairness opinions and the various valuation analyses performed in support of their opinions.  However, the description of

Centerview's and PJT's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Mylan's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Centerview's and PJT's fairness opinions in determining whether to vote in favor of the Proposed Transaction.

42.     With respect to Centerview's and PJT's *Selected Public Comparable Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics observed for each of the selected comparable companies.

43.     With respect to Centerview's and PJT's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rate range of 8.0% to 10.0% for each of Mylan and the Upjohn Business; (ii) the financial metric that exit multiples of 6.5x to 7.5x were applied to in order to derive the terminal values and quantification of the metric; (iii) the implied perpetuity growth rates resulting from the analysis; and (iv) quantification of the Synergies utilized in the analysis.

44.     The omission of this information renders the statements in the "Summary of the Financial Analyses of Mylan's Financial Advisors" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning PJT's Potential Conflicts of Interest***

45.     The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by one of the Company's financial advisors, PJT.

46.     For example, the Proxy Statement sets forth:

During the two years preceding the date of its written opinion, PJT Partners and certain of its affiliates are advising or have advised (i) Mylan in connection with general corporate governance and shareholder engagement practices unrelated to the transactions through PJT Camberview, a business PJT Partners acquired as of

October 1, 2018, for which PJT Partners has received and will receive customary compensation; and (ii) Pfizer in connection with general corporate governance and shareholder engagement practices unrelated to Mylan or the transactions, through PJT Camberview, for which PJT Partners has received and will receive customary compensation. In addition, a partner of PJT Partners, who was not a member of the PJT Partners deal team advising Mylan in connection with the transactions, is the son of W. Don Cornwell, a member of the Board of Directors of Pfizer.

*Id.* at 121. The Proxy Statement fails, however, to disclose the compensation PJT has received or expects to receive for its advisory services for Mylan and Pfizer set forth above.

47.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

48.     The omission of this information renders the statements in the "Summary of the Financial Analyses of Mylan's Financial Advisors" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

49.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Mylan stockholders will be unable to make an informed voting decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

50.     Plaintiff repeats all previous allegations as if set forth in full.

51.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

52.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the Company's and the Upjohn Business' financial projections, the inputs and assumptions underlying Centerview's and PJT's financial analyses, and PJT's potential conflicts of interest.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

53.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

54.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

55.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## **COUNT II**

### **Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

56.     Plaintiff repeats all previous allegations as if set forth in full.

57.     The Individual Defendants acted as controlling persons of Mylan within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Mylan, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

58.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

60.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

61.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Mylan stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in its favor on behalf of Mylan, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Mylan stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated: April 7, 2020                                     **WEISSLAW LLP**

By  _____
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*